36773. STATE HOUSECRAFT, INC. *v.* JONES.

DECIDED JULY 10, 1957.

*Harold Karp, Ferrin Y. Mathews,* for plaintiff in error.
*Matthews & McClelland, J. Ralph McClelland, Jr.,* contra.
TOWNSEND, J. ■ Code § 28-201 provides as follows: "The

following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void . . . (2). Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any descirption, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." An agreement between the vendor and purchaser that the property shall remain in the possession of the vendor, not satisfactorily explained, is a badge of fraud. *Taliaferro* v. *Moffett*, 54 *Ga.* 150. Where such continued possession in the vendor is shown, the burden of evidence shifts to the claimant. *Greene* v. *Matthews*, 31 *Ga. App.* 265 (1) (120 S. E. 434). In determining the intent of the grantor, circumstantial evidence, either to raise or rebut an inference of fraud, is of the highest importance. "The issue of bona fides is peculiarly a jury question; and while a juror may not be authorized to captiously disregard the testimony of a witness who is not impeached in any of the modes prescribed by law, still a juror is at liberty, dependent upon the circumstances of the case, to disbelieve any testimony of any or all of the witnesses in a case." *Eberhardt* v. *Bennett*, 163 *Ga.* 796 (5) (137 S. E. 64). That the claimant has notice of the fraudulent intention of the grantor may also be shown by circumstantial evidence. *Betton* v. *Avery*, 183 *Ga.* 559 (3) (188 S. E. 901).

With these rules of law in mind, we examine the evidence of the case, construing it, as we must, in favor of the judgment rendered. The Buick automobile in question had been the property of M. M. Karr, used by him personally and in connection with a business of which he was owner, Interstate Roofing & Siding Company. His home was in Atlanta and he operated that business largely outside the State. His son, A. M. Karr, worked for him, and, according to the son, had no share in the profits of that business, but M. M. Karr testified that his son did have an interest in profits. On March 9, 1954, on which date Karr admitted he was insolvent, and on which day the automobile was sold to State Housecraft, Inc., the Interstate Roofing business had been closed down for a couple of months because of financial

difficulties, and there were pending against M. M. Karr not only this action but five other actions or judgments, in at least one of which A. M. Karr was a witness. State Housecraft, Inc., was incorporated on February 18, 1954, with Henry E. Glasser as president and A. M. Karr as secretary and treasurer. M. M. Karr was manager and salesman of this company. Glasser and the Karrs had been "friends for a lifetime" and both were represented by the same attorney. The automobile, after the sale, remained in the possession of M. M. Karr who continued to use it for personal and company business, and when levied upon it was found at his home. M. M. Karr's activities in connection with State Housecraft, Inc., took him out of the State to the same places, and in connection with the same line of work, as had his business with Interstate Roofing.

Upon the trial radical inconsistencies developed in the testimony of these witnesses. M. M. Karr stated that he did not know of the pending actions and judgments against him because he had either "turned them over to" his wife or his attorney. His wife signed the claim bond in this case as secretary of the claimant, State Housecraft, Inc., but according to Glasser she had no interest in the corporation, had never been an officer or employee. She had rendered services to Glasser in his former business, but without compensation and only as a matter of accommodation. A. M. Karr denied knowledge of his father's insolvency or the insolvency of Interstate Roofing, but M. M. Karr testified that he had explained to his son in December the financial reasons for discontinuing the business. A. M. Karr denied knowledge of the extent of his own interest in State Housecraft, Inc., stating that he had bought 5 shares of stock for $500 but did not know the extent of Glasser's interest. Glasser testified that the corporation was doing business on a basis of $1,000 capital stock, half belonging to him and half to A. M. Karr. Glasser denied any knowledge of Karr's insolvency, but M. M. Karr became manager of the new corporation within a month or so of the time Karr discontinued his former business and while a number of suits and judgments were pending against him and only a few months before filing his petition in bankruptcy. As of the date of trial, A. M. Karr, who maintained

he was secretary of the corporation, and who had a one-half interest therein, did not know whether its charter was still extant or whether it was still in business.

In the face of this testimony the court was authorized to find that Karr's continued possession of the automobile after the transfer was not satisfactorily explained, and that accordingly the burden was on the claimant to sustain its contentions. He was further authorized, in view of the inconsistency of the testimony of these witnesses as to their closely interwoven financial transactions, to regard any of them whom he chose as impeached, and to believe that part of the testimony which he found credible and disbelieve the remainder. After doing so, he was amply authorized by the circumstantial evidence in the case to find that State Housecraft, Inc., and its president, Glasser, who arranged for the purchase of the 5 automobiles of which the Buick in question is one from M. M. Karr, had at least grounds for reasonable suspicion that M. M. Karr was insolvent, and was selling the property for the purpose of delaying or defrauding creditors. The plaintiff in execution made out a prima facie case by showing possession in the defendant between the dates of the judgment and levy of execution, after which the burden shifted to the claimant to offer a satisfactory explanation of such possession consistent with its own claims, or else be taxed with the burden of showing that the sale was not tainted with fraud as alleged. The court was authorized to find it had not carried the burden in either of these particulars, and accordingly to find in favor of the plaintiff in execution.

■ There was no error in allowing counsel for the plaintiff in execution to question the witness M. M. Karr on cross-examination and thereby elicit the information that the witness had advised his son in December, 1953, and January, 1954, that "things were going bad" relative to the financial condition of his business. The right to a thorough and sifting cross-examination should not be abridged except by necessity, and counsel has a right to inquire into the veracity, memory and competency of witnesses on cross-examination in any material matter. The insolvency of M. M. Karr at or about the time the conveyance in question was made was relevant and material.

*Warren* v. *Citizen's Nat. Bank of Danville*, 145 *Ga.* 503 (2) (89 S. E. 520); *May* v. *Leverette*, 164 *Ga.* 552 (2) (139 S. E. 31). The trial court did not err in denying the motion for new trial. *Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*